**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| | | **Case No. 24−11528-DER** |
| **PROVIZOR FEDERAL, INC.,** | * | |
| | | **Chapter 7** |
| **Debtor.** | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT AND
COMPROMISE OF CONTROVERSIES BETWEEN THE TRUSTEE AND
<u>KORE CAPITAL CORPORATION</u>**

Morgan W. Fisher, Chapter 7 Trustee for Provizor Federal, Inc. (the "**Trustee**"), moves pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, for entry of an order approving a claims settlement between the Trustee and KORE Capital Corporation ("**KORE**"), the prepetition and post-petition secured creditor and DIP lender to Provizor Federal, Inc. (f/k/a OMV Medical, Inc.), (the "**Debtor**") and TIP lender to the Trustee, and in support thereof, states as follows:

**<u>Jurisdiction and Venue</u>**

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this Chapter 11 case in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the requested relief are Section 105(a) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and Fed. R. Bankr. P. 9019.

**<u>Background</u>**

3.      On February 26, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  On May 16, 2024 (the "**Conversion Date**"), the Court

entered an order converting the Debtor's case to Chapter 7, and thereafter the Trustee was appointed as representative of the Debtor's estate.

4. Prior to the Petition Date, KORE made certain loan advances and provided other financial accommodations to the Debtor pursuant to a Revolving Credit and Security Agreement, dated as of October 7, 2021, by and between the Debtor and KORE (the "**Prepetition Loan Agreement**"), and all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of KORE in connection with the Prepetition Loan Agreement (all collectively, the "**Prepetition Loan Documents**"). KORE loaned the Debtor in excess of $2 million prepetition and was the Debtor's sole secured lender.

5. As of the Petition Date, (i) the Debtor was indebted under the Prepetition Loan Documents to KORE in the aggregate outstanding principal amount of Two Million Two Hundred Twenty-one Thousand Three Hundred Sixty-one and 29/100 Dollars ($2,221,361.29) plus interest accrued, accruing or chargeable with respect thereto and other charges, including, but not limited to, any contingent or unliquidated liabilities (the "**Prepetition Secured Obligations**"), and (ii) the Prepetition Secured Obligations were secured pursuant to the Prepetition Loan Documents by valid, perfected, enforceable, and non-avoidable first-priority security interests and liens granted by the Debtor to KORE under the Prepetition Loan Documents, in all of the existing and after-acquired assets of the Debtor as more fully set forth in the Prepetition Loan Documents.

6. After the Petition Date, KORE provided financing to the Debtor pursuant to a Senior Secured Superpriority Priming Debtor-in Possession Revolving Credit and Security Agreement, dated as of February 25, 2024, by and among the Debtor and KORE, and the Bankruptcy Court entered orders approving such financing found at ECF Nos. 27 and 68.

7. Thereafter, various issues arose in the Chapter 11 case, and the Debtor was unable to continue operating its business based on its then income projections, and KORE declined to further fund the chapter 11 Debtor's operations. Upon a motion to convert the case, the Court, on May 16, 2024, converted the case to Chapter 7 and the United States Trustee appointed the Trustee.

8. On May 20, 2024, the Trustee filed an Emergency Motion in the Bankruptcy Case for authority to, in part, obtain post-conversion financing for an interim period from KORE pursuant to that certain Senior Secured Superpriority Priming Trustee-in-Possession Revolving Credit and Security Agreement, dated as of May 20, 2024, by and among the Trustee and KORE (the "**TIP Credit Agreement**").

9. In its May 22, 2024 Order, ECF No. 246 (the "**First TIP Order**"), and a second funding order, ECF No. 277 (the "**Second TIP Order**"), the Bankruptcy Court, in part, (i) approved the TIP Credit Agreement, subject to certain limitations, and (ii) ordered that KORE was not required to file a proof of claim in the Bankruptcy Case and that the entry of the Order shall be deemed to constitute a timely filed proof of claim (the "**KORE Proof of Claim**" and the claim embodied therein, "**KORE's Claim**"). Further, pursuant to the First and Second TIP Orders, KORE was granted a first priority security interest on estate Avoidance Action recoveries.

10. There are currently three (3) active Avoidance Action adversary proceedings that the Trustee initiated on behalf of the estate, as plaintiff, against certain defendants—Loyal Source Government Services, Adv. Proc. No. 24-00233-DER, Impel Capital *et. al.*, Adv. Proc. No. 26-00040-DER and LCMH *et. al.*, Adv. Proc. No. 26-00039-DER.

11. With respect to the Loyal Source adversary proceeding, on February 2, 2026, following a motion for summary judgment filed by Loyal Source (the "**Summary Judgment Motion**") and an opposition and cross motion for summary judgment filed by the Trustee (the

"**Opposition and Cross Motion for Summary Judgment**"), the Bankruptcy Court entered an Order (i) denying the Loyal Source Summary Judgment Motion, (ii) granting the Cross Motion for Summary Judgment, and (iii) entering partial summary judgment in favor of the Trustee and against Loyal Source on the "transfer" issue referenced therein—*i.e.*, the Bankruptcy Court determined that there was no dispute of material fact and found as a matter of law that a transfer to Loyal Source occurred for purposes of Section 547 of the Bankruptcy Code when the District Court entered the Confirmation Order (as defined in the Partial Summary Judgement Order) (such Order, the "**Partial Summary Judgment Order**").

12.     On February 15, 2026, Loyal Source filed a Motion for Leave to Appeal Bankruptcy Court Order Granting Partial Summary Judgment in Favor of Plaintiff and a corresponding Notice of Appeal (collectively, the "**Interlocutory Appeal Motion**").

13.     On March 2, 2026, the Trustee filed a Response in Opposition to the Interlocutory Appeal Motion (the "**Opposition**") and, on March 16, 2026, Loyal Source filed a Reply in Support of its Interlocutory Appeal Motion (collectively with the Interlocutory Appeal Motion and the Opposition, the "**Interlocutory Appeal Motion, Opposition, and Reply**").  This matter remains pending at the District Court.

14.     With respect to the other adversary proceedings (*i.e.* Impel, et al. and LCMH, et al.), these matters are fully joined and proceeding into the discovery phase of the cases.

15.     KORE and the Trustee have engaged in extensive, arm's-length negotiations in good faith aimed at reaching a consensual resolution of KORE's Proof of Claim and the assignment of the estate's rights to prosecute the referenced adversary proceedings (for which KORE already has a lien on recoveries) – the benefits to the Trustee and estate are significant. First, while the Trustee believes that he holds valid claims in each adversary proceeding, the costs

of the litigation are extraordinary, largely based upon the defense strategies, the Loyal Source appeal, etc.  Additionally, the defendants in the Impel litigation continue to violate the Court's discovery (2004) orders.  Finally, while there is a known bucket of funds in the Loyal Source litigation (i.e. the approximate $830,000.00 escrowed funds the Trustee holds), Loyal Source is intent (seemingly as part of its litigation strategy) on causing the estate to incur litigation costs that will ultimately approach the value of the *res* of the funds in dispute. Loyal Source has said it will appeal any loss, and it has proven that it will even on an interlocutory basis.  If, on the other hand, the Trustee ultimately loses to Loyal Source, there will be no recovery for the estate.  With respect to the Impel and LCMH adversary proceedings, while the Trustee believes that his claims will ultimately prevail, there is a significant collection risk from the defendants.

16.     Accordingly, the Trustee entered into the negotiations with KORE to reach both a resolution of KORE's claim and a resolution that would shift the risk and costs of litigation away from the estate to the party (KORE) who holds a lien on the recoveries in any event.  As a result of those negotiations, the Trustee and KORE have agreed, subject to the approval of the Court, to settle KORE's Proof of Claim on the terms and conditions set forth in the Claim Settlement and Sale Agreement attached hereto as **Exhibit A** (the "**Settlement Agreement**") and effect the assignment of the ongoing litigation to KORE.[1]  In summary, the material terms of the Settlement Agreement are as follows:[2]

---

[1] The Trustee notes that he has implored either KORE or Loyal Source to reach a settlement such as the one he now seeks approval of by this motion.  Despite repeated attempts, only the agreement set forth herein with KORE was reached – Loyal Source has indicated that it is not interested in a claims/litigation purchase or assignment as a resolution.

[2] The Settlement Agreement, attached hereto as **Exhibit A**, contains all the terms of the agreement and resolution.  The Trustee notes that the terms set forth in this motion are simply a summary thereof, and that the Settlement Agreement controls.

a. KORE agrees to pay to the Trustee One Hundred Fifteen Thousand and 0/100 Dollars ($115,000.00);

b. KORE agrees to file a notice of voluntary withdrawal of KORE's Claim pursuant to the Bankruptcy Rules, with prejudice;

c. KORE agrees to prosecute the Pending Causes of Action on behalf of the Trustee and Estate;

d. KORE agrees to assume all Fees and Expenses in connection with the prosecution of the Pending Causes of Action;

e. KORE agrees to provide the Estate with a percentage recovery of Proceeds of the Pending Causes of Action, all on the terms and conditions set forth in the Settlement Agreement. In the Loyal Source adversary proceeding, in the event of judgment or settlement, the Trustee will be paid $115,000.00 plus 5% of the recovery. In the Impel and LCMH adversary proceedings, the Trustee is to be paid 5% of any recoveries; and

f. The Trustee agrees to sell to KORE, free and clear of any liens, interests, and encumbrances, an undivided one hundred percent (100%) interest in the Pending Causes of Action and Proceeds therefrom on the terms and conditions set forth in the Settlement Agreement.

**Basis for Relief and Relief Requested**

17. Pursuant to Bankruptcy Rule 9019, courts may approve a compromise or settlement after notice and a hearing. In *U.S. ex rel. Rahman v. Oncology Associates, P.C. (In re Equimed, Inc.)*, 269 B.R. 139, 149 (D. Md. 2001), the United States District Court for the District of Maryland set forth the factors for a court to consider in approving a settlement. These factors include:

a. the probability of success in litigation;

b. the difficulties, if any, to be encountered in the matter of collection;

c. the complexity of the litigation involved (including the expense, inconvenience and delay necessarily attending the litigation); and

d. the paramount interest of the creditors and a proper deference to their reasonable views.

6

The district court further explained that a court may approve a settlement even over objection unless the proposed settlement falls below the "lowest point in the range of reasonableness." *Id.* at 150; *see also In re Bowman,* 181 B.R. 836, 846 (Bankr. D. Md. 1995).

18.     Ultimately, when considering the above factors and principles, "the essential inquiry which this Court must make . . . is to determine whether the compromise reached by the parties is 'fair and equitable' and in the best interests of the estate." *Rahman*, 269 B.R. at 150; *see also Nussbaum v. United States* (*In re Smith)*, 210 B.R. 689, 692 (Bankr. D. Md. 1997).  Thus, "[o]bjection [to a proposed settlement] is not fatal to such a settlement if '[it] is found to be in the best interests of the estate as a whole.'" *St. Paul Fire & Marine Ins. Co. v. Vaughn (In re Vaughn)*, 779 F.2d 1003, 1010 (4th Cir. 1985) (quoting *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1138 (8th Cir. 1984)).  Finally, in determining whether the proposed compromise is in the best interest of the estate, "[i]t is well established that a bankruptcy court's approval of a settlement … is within its sound discretion." *Id.*

19.     In negotiating and ultimately entering into the terms of the Settlement Agreement, the Trustee considered the nature of the claims asserted, the probability of success on the merits of those claims, the inherent litigation risks of the claims, and the costs of litigation. For example, the Trustee has reviewed and considered KORE's Proof of Claim and the status of the Pending Causes of Action (including, but not limited to, the Partial Summary Judgment Order and the Interlocutory Appeal Motion, Opposition, and Reply), and has determined that the Pending Causes of Action have already resulted in, and likely will continue to result in, lengthy litigation and discovery and that the Estate could face significant liability if Loyal Source is successful in its Interlocutory Appeal and/or if the defendants in the other Pending Causes of Action have meritorious defenses to the claims therein or prove to be uncollectible after judgments.  The

settlement will allow the Trustee to avoid the inherent risks and costs associated with litigation without having to pursue his adversary proceedings and increase the recovery of Proceeds from the Pending Causes of Action. The Trustee believes in the exercise of his business judgment that the proposed settlement is in the best interest of the Debtor's estate, is fair and equitable, and should be approved.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests the following relief:

A.      That the Settlement Agreement attached hereto as **Exhibit A** be approved;

B.      That the Trustee be authorized to take any and all actions and execute any and all documents necessary and appropriate to effectuate and consummate the Settlement Agreement; and

C.      That the Trustee be granted such other and further relief as is just and equitable.

Dated: June 17, 2026

/s/ Richard M. Goldberg
Richard M. Goldberg, Fed. Bar No. 07994
Daniel J. Zeller, Fed. Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4274
Fax: 410-539-7611
Email: rmg@shapirosher.com
           djz@shapirosher.com

*Counsel to Plaintiff Morgan W. Fisher,*
*Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of June, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing will be served electronically by the Court's CM/ECF system on the following:

**Hugh M. (UST) Bernstein**   hugh.m.bernstein@usdoj.gov

**Aaron L. Casagrande**   Aaron.casagrande@Icemiller.com

**Addison J. Chappell**   achappell@milesstockbridge.com

**Robert Paul Charbonneau**   rpc@agentislaw.com,
bankruptcy@agentislaw.com;nsocorro@agentislaw.com

**Michael Collins**   collins@councilbaradel.com

**Strider Dickson**   sdickson@mdswlaw.com

**John Fitzgerald Dougherty**   jdougherty@kg-law.com

**Justin Philip Fasano**   jfasano@mhlawyers.com,
jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com

**Morgan W. Fisher**   trustee@morganfisherlaw.com,
MD65@ecfcbis.com;fisher@premierremote.com

**Jonathan Lawrence Gold**   jgold@baileyglasser.com, sbrogi@dickinson-wright.com

**Richard J Hackerman**   Richard@RichardHackerman.com,
6923530420@filings.docketbird.com;Hackerman.RichardR106256@notify.bestcase.com

**Catherine Keller Hopkin**   chopkin@yvslaw.com,
pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com

**Kevin G. Hroblak**   kevin.hroblak@icemiller.com, madelin.hill@icemiller.com

**Martinis Montrelle Jackson**   martinis.jackson@jlegalservices.com

**Patricia B. Jefferson**   pjefferson@milesstockbridge.com

9

**Bradley David Jones**    brad.jones@stinson.com

**Shelby Kostolni**    shelby.kostolni@stinson.com

**Lauren Lake**    llake@gfrlaw.com, alazo@gfrlaw.com

**Jung Yong Lee**    jlee@milesstockbridge.com, mhickman@tydings.com

**Jean Evelyn Lewis**    jlewis@kg-law.com, swisthoff@kg-law.com

**Stephen A. Metz**    smetz@offitkurman.com, mmargulies@offitkurman.com

**David Simson Musgrave**    dmusgrave@gfrlaw.com, jojones@gfrlaw.com

**David J. Shuster**    dshuster@kg-law.com, ssohn@kg-law.com

**Lisa Yonka Stevens**    lstevens@milesstockbridge.com

**Paul Sweeney**    psweeney@yvslaw.com,
jbeckman@yvslaw.com;pgomez@yvslaw.com;cadams@yvslaw.com;sweeneypr39990@
notify.bestcase.com;r39990@notify.bestcase.com;vmichaelides@yvslaw.com

**US Trustee - Baltimore**    USTPRegion04.BA.ECF@USDOJ.GOV


/s/ *Richard M. Goldberg*
Richard M. Goldberg

10