IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| | | Case No. 24−11528-DER |
| PROVIZOR FEDERAL, INC., | * | |
| | | Chapter 7 |
| Debtor. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**TRUSTEE'S AMENDED MOTION (I) FOR APPROVAL OF SETTLEMENT
AND COMPROMISE OF CONTROVERSIES BETWEEN THE TRUSTEE
AND KORE CAPITAL CORPORATION AND (II) AUTHORIZING SALE
OF PENDING CAUSES OF ACTION FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

Morgan W. Fisher, Chapter 7 Trustee for Provizor Federal, Inc. (the "**Trustee**"), moves pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure, for entry of an order approving a claims settlement between the Trustee and KORE Capital Corporation ("**KORE**"), the prepetition and post-petition secured creditor and DIP lender to Provizor Federal, Inc. (f/k/a OMV Medical, Inc.), (the "**Debtor**") and TIP lender to the Trustee, and in conjunction authorizing the sale of the Pending Causes of Action (as defined below) to KORE free and clear of liens, claims, encumbrances and interests, and in support thereof, states as follows:

**HIGHLIGHTED PROVISIONS PURSUANT TO LOCAL BANKRUPTCY RULE 6004-2**

In accordance with L.R.R. 6004-2(a) and 6004-1(a)-(i), the Trustee highlights the following provisions in connection with the proposed sale set forth in this Amended Motion:

**(a) If an appraisal has been performed**: No formal appraisal of the Pending Causes of Action has been performed.  The Trustee has offered to sell the Pending Causes of Action to Loyal Source Government Services, LLC ("**Loyal Source**") and two other independent parties and no other offers were received.  The Trustee discusses the Pending Causes of Action below.

**(b)** **If no appraisal has been performed, the scheduled value of the asset being sold**:
The Pending Causes of Action were not scheduled, other than "liquidated and unliquidated causes of action" against Loyal Source with unknown value.  The Trustee discusses the Pending Causes of Action below.

**(c)** **The purchaser's identity**: The purchaser is KORE, the Debtor's primary pre- and post-petition secured lender, as described below.

**(d)** **A full description of any relationship between the purchaser and any party in interest**:  KORE has a substantial secured claim in the bankruptcy estate, with a lien on the Pending Causes of Action.  KORE is also party to certain litigations with Loyal Source Government Services, LLC.  As set forth in the Settlement Agreement, the Trustee and KORE recognize and acknowledge that the ultimate distribution of the Loyal Source Escrow Account (as defined in the Settlement Agreement, as referenced below) is subject to rulings in the following lawsuits: (a) *Provizor Federal Inc. et al. v. Loyal Source Government Services, LLC* [Adv. Proc. No. 24-00082], pending before the Bankruptcy Court; (b) *Loyal Source Government Services, LLC v. Kore Capital Corporation* [Adv. Proc. No. 24-00112], pending before the Bankruptcy Court; and (c) *Loyal Source Government Services, LLC v. OMV Medical, Inc. N/K/A Provizor Federal Inc.* [Case No. 1:23-cv-02889], pending before the District Court.

**(e)** **A statement of all consideration paid and to be paid by the purchaser and the payment terms**: KORE's Claim (as defined below) shall be deemed satisfied by the settlement and sale.  KORE additionally will pay $115,000.00 to the bankruptcy estate upon entry of an Order approving this Amended Motion, and additional amounts from the proceeds of the Pending Causes of Action.  See below for further description.

**(f)** **A statement of the deadline for the filing of any opposition**: The deadline for Loyal Source to object to the Amended Motion is August 25, 2026, as set forth in the Notice filed herewith and the Order [ECF No. 566] entered by the Court.

**(g)** **A date selected from the Court Hearing Scheduler Program for a hearing for this type of motion**: The Court has specially set the hearing on the Amended Motion for September 29, 2026 at 10 a.m. as set forth in the Notice filed herewith and the Order [ECF No. 566].

**(h)** **A statement that the motion may be granted and the property may be sold without further notice if a timely objection is not filed**:  The Notice filed herewith so provides.

**(i)** **A statement of all charges and costs to be paid by the estate and all concessions to be made by the estate**: There are no charges or costs to be paid by the estate. The Settlement Agreement provides for the terms of the sale.

**(j)** **Description of all liens, claims, or other interests against the property**:  KORE has a lien on the Pending Causes of Action and Loyal Source asserts a lien as well.  *See* description below.

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this Chapter 11 case in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for the requested relief are Sections 105(a), 363, and 541 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and Fed. R. Bankr. P. 6004 and 9019.

## BACKGROUND

3.    On February 26, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  On May 16, 2024 (the "**Conversion Date**"), the Court

3

entered an order converting the Debtor's case to Chapter 7, and thereafter the Trustee was appointed as representative of the Debtor's estate.

4.      Prior to the Petition Date, KORE made certain loan advances and provided other financial accommodations to the Debtor pursuant to a Revolving Credit and Security Agreement, dated as of October 7, 2021, by and between the Debtor and KORE (the "**Prepetition Loan Agreement**"), and all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of KORE in connection with the Prepetition Loan Agreement (all collectively, the "**Prepetition Loan Documents**").  KORE loaned the Debtor in excess of $2 million prepetition and was the Debtor's sole secured lender.

5.      As of the Petition Date, (i) the Debtor was indebted under the Prepetition Loan Documents to KORE in the aggregate outstanding principal amount of Two Million Two Hundred Twenty-one Thousand Three Hundred Sixty-one and 29/100 Dollars ($2,221,361.29) plus interest accrued, accruing or chargeable with respect thereto and other charges, including, but not limited to, any contingent or unliquidated liabilities (the "**Prepetition Secured Obligations**"), and (ii) the Prepetition Secured Obligations were secured pursuant to the Prepetition Loan Documents by valid, perfected, enforceable, and non-avoidable first-priority security interests and liens granted by the Debtor to KORE under the Prepetition Loan Documents, in all of the existing and after-acquired assets of the Debtor as more fully set forth in the Prepetition Loan Documents.

6.      After the Petition Date, KORE provided financing to the Debtor pursuant to a Senior Secured Superpriority Priming Debtor-in Possession Revolving Credit and Security Agreement, dated as of February 25, 2024, by and among the Debtor and KORE, and the Bankruptcy Court entered orders approving such financing found at ECF Nos. 27 and 68.

7.      Thereafter, various issues arose in the Chapter 11 case, and the Debtor was unable to continue operating its business based on its then income projections, and KORE declined to further fund the chapter 11 Debtor's operations.  Upon a motion to convert the case, the Court, on May 16, 2024, converted the case to Chapter 7 and the United States Trustee appointed the Trustee.

8.      On May 20, 2024, the Trustee filed an Emergency Motion in the Bankruptcy Case for authority to, in part, obtain post-conversion financing for an interim period from KORE pursuant to that certain Senior Secured Superpriority Priming Trustee-in-Possession Revolving Credit and Security Agreement, dated as of May 20, 2024, by and among the Trustee and KORE (the "**TIP Credit Agreement**").

9.      In its May 22, 2024 Order, ECF No. 246 (the "**First TIP Order**"), and a second funding order, ECF No. 277 (the "**Second TIP Order**"), the Bankruptcy Court, in part, (i) approved the TIP Credit Agreement, subject to certain limitations, and (ii) ordered that KORE was not required to file a proof of claim in the Bankruptcy Case and that the entry of the Order shall be deemed to constitute a timely filed proof of claim (the "**KORE Proof of Claim**" and the claim embodied therein, "**KORE's Claim**"). Further, pursuant to the First and Second TIP Orders, KORE was granted a first priority security interest on estate Avoidance Action recoveries.  As of May 31, 2026, the full amount of KORE's Claim was $2,339,239.36, plus legal fees.

10.      There are currently three (3) active Avoidance Action adversary proceedings that the Trustee initiated on behalf of the estate, as plaintiff, against certain defendants—Loyal Source Government Services, Adv. Proc. No. 24-00233-DER, Impel Capital *et. al*., Adv. Proc. No. 26-00040-DER and LCMH *et. al*., Adv. Proc. No. 26-00039-DER (collectively, the "**Pending Causes of Action**").  In the Loyal Source adversary proceeding, the Trustee seeks the avoidance of the imposition of a constructive trust on an escrow fund in the amount of $830,906.00 (the "**Loyal**

**Source Escrow Account**") as a preference and the recovery of the escrowed funds for the benefit of the estate, which funds are subject to KORE's pre-petition and post-petition liens.  Any ultimate distribution of the Loyal Source Escrow Account is subject to further court order.  In the Impel Capital adversary proceeding, the Trustee seeks to, inter alia, avoid and recover fraudulent and preferential transfers to certain insiders and principals of the Debtor, in the total amount of approximately $10.7 million.  In the LCMH adversary proceeding, the Trustee seeks to avoid and recover fraudulent transfers to certain insiders and principals of the Debtor, in the total amount of approximately $423,000.

11.     With respect to the Loyal Source adversary proceeding, on February 2, 2026, following a motion for summary judgment filed by Loyal Source (the "**Summary Judgment Motion**") and an opposition and cross motion for summary judgment filed by the Trustee (the "**Opposition and Cross Motion for Summary Judgment**"), the Bankruptcy Court entered an Order (i) denying the Loyal Source Summary Judgment Motion, (ii) granting the Cross Motion for Summary Judgment, and (iii) entering partial summary judgment in favor of the Trustee and against Loyal Source on the "transfer" issue referenced therein—*i.e.*, the Bankruptcy Court determined that there was no dispute of material fact and found as a matter of law that a transfer to Loyal Source occurred for purposes of Section 547 of the Bankruptcy Code when the District Court entered the Confirmation Order (as defined in the Partial Summary Judgement Order) (such Order, the "**Partial Summary Judgment Order**").

12.     On February 15, 2026, Loyal Source filed a Motion for Leave to Appeal Bankruptcy Court Order Granting Partial Summary Judgment in Favor of Plaintiff and a corresponding Notice of Appeal (collectively, the "**Interlocutory Appeal Motion**").

13. On March 2, 2026, the Trustee filed a Response in Opposition to the Interlocutory Appeal Motion and, on March 16, 2026, Loyal Source filed a Reply in Support of its Interlocutory Appeal Motion (collectively with the Interlocutory Appeal Motion and the Opposition, the "**Interlocutory Appeal**"). On June 23, 2026, the District Court entered an order that authorized the interlocutory appeal to proceed and a briefing schedule has been set. *See* Case 1:26-cv-00707-SAG.

14. With respect to the other adversary proceedings (*i.e.* Impel, et al. and LCMH, et al.), these matters are fully joined and proceeding into the discovery phase of the cases.

15. KORE and the Trustee have engaged in extensive, arm's-length negotiations in good faith aimed at reaching a consensual resolution of KORE's Proof of Claim and the assignment of the estate's rights to prosecute the referenced Pending Causes of Action (for which KORE already has a lien on recoveries) – the benefits to the Trustee and estate are significant. First, while the Trustee believes that he holds valid claims in each adversary proceeding, the costs of the litigation are extraordinary, largely based upon the defense strategies, the Loyal Source appeal, etc. Additionally, the defendants in the Impel litigation continue to violate the Court's discovery (2004) orders. Finally, while there is a known bucket of funds in the Loyal Source litigation (*i.e.*, the approximate $830,000.00 escrowed funds the Trustee holds), Loyal Source is intent (seemingly as part of its litigation strategy) on causing the estate to incur litigation costs that will ultimately approach the value of the *res* of the funds in dispute. Loyal Source has said it will appeal any adverse ruling, and it has proven that it will do so even on an interlocutory basis. If, on the other hand, the Trustee ultimately loses to Loyal Source, there will be no recovery for the estate. With respect to the Impel and LCMH adversary proceedings, while the Trustee believes that his claims will ultimately prevail, there is a significant collection risk from the defendants.

16.    Accordingly, the Trustee entered into the negotiations with KORE to reach both a resolution of KORE's claim and a resolution that would monetize the value of the Pending Causes of Action and shift the risk and costs of litigation away from the estate to the party (KORE) who holds a lien on the recoveries in any event.  As a result of those negotiations, the Trustee and KORE have agreed, subject to the approval of the Court, to settle KORE's Proof of Claim on the terms and conditions set forth in the First Amended and Restated Claim Settlement and Sale Agreement attached hereto as **Exhibit A** (the "**Settlement Agreement**") and **Exhibit B**[1] and effect the assignment of the ongoing litigation to KORE.[2]    In summary, the material terms of the Settlement Agreement are as follows:[3]

a.    KORE agrees to pay to the Trustee One Hundred Fifteen Thousand and 0/100 Dollars ($115,000.00);

b.    KORE agrees to file a notice of voluntary withdrawal of KORE's Claim pursuant to the Bankruptcy Rules, with prejudice;

c.    The Trustee agrees to sell to KORE, free and clear of any liens, interests, and encumbrances, an undivided one hundred percent (100%) interest in the Pending Causes of Action and Proceeds therefrom on the terms and conditions set forth in the Settlement Agreement;

d.    KORE agrees to assume all Fees and Expenses in connection with the prosecution of the Pending Causes of Action;

---

[1] **Exhibit A** is a "clean" version of the amended and restated agreement.  **Exhibit B** is the "Track Changes" version showing all changes from the original agreement filed previously at ECF No. 560; June 17, 2026.

[2] The Trustee notes that he has implored either KORE or Loyal Source to reach a settlement such as the one he now seeks approval of by this motion.  Despite repeated attempts, only the agreement set forth herein with KORE was reached – Loyal Source has indicated that it is not interested in a claims/litigation purchase or assignment as a resolution.

[3] The Settlement Agreement, attached hereto as **Exhibit A**, contains all the terms of the agreement and resolution.  The Trustee notes that the terms set forth in this motion are simply a summary thereof, and that the Settlement Agreement controls.  Capitalized terms not defined herein shall have the meanings ascribed in the Settlement Motion.

e.      KORE agrees to provide the Estate with a percentage recovery of Proceeds of the Pending Causes of Action, all on the terms and conditions set forth in the Settlement Agreement.  In the Loyal Source adversary proceeding, in the event of judgment or settlement, the Trustee will be paid $115,000.00 plus 5% of the recovery.  In the Impel and LCMH adversary proceedings, the Trustee is to be paid 5% of any recoveries..

## BASIS FOR RELIEF AND RELIEF REQUESTED

### A.      Approval of Settlement of KORE's Claim

17.      Pursuant to Bankruptcy Rule 9019, courts may approve a compromise or settlement after notice and a hearing.  In *U.S. ex rel. Rahman v. Oncology Associates, P.C. (In re Equimed, Inc.)*, 269 B.R. 139, 149 (D. Md. 2001), the United States District Court for the District of Maryland set forth the factors for a court to consider in approving a settlement.  These factors include:

a.      the probability of success in litigation;

b.      the difficulties, if any, to be encountered in the matter of collection;

c.      the complexity of the litigation involved (including the expense, inconvenience and delay necessarily attending the litigation); and

d.      the paramount interest of the creditors and a proper deference to their reasonable views.

The district court further explained that a court may approve a settlement even over objection unless the proposed settlement falls below the "lowest point in the range of reasonableness." *Id.* at 150; *see also In re Bowman,* 181 B.R. 836, 846 (Bankr. D. Md. 1995).

18.      Ultimately, when considering the above factors and principles, "the essential inquiry which this Court must make . . . is to determine whether the compromise reached by the parties is 'fair and equitable' and in the best interests of the estate."  *Rahman*, 269 B.R. at 150; *see also Nussbaum v. United States* (*In re Smith*), 210 B.R. 689, 692 (Bankr. D. Md. 1997).  Thus, "[o]bjection [to a proposed settlement] is not fatal to such a settlement if '[it] is found to be in the

9

best interests of the estate as a whole.'" *St. Paul Fire & Marine Ins. Co. v. Vaughn (In re Vaughn)*, 779 F.2d 1003, 1010 (4th Cir. 1985) (quoting *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1138 (8th Cir. 1984)).  Finally, in determining whether the proposed compromise is in the best interest of the estate, "[i]t is well established that a bankruptcy court's approval of a settlement … is within its sound discretion." *Id.*

19.     In negotiating and ultimately entering into the terms of the Settlement Agreement, the Trustee considered the nature of the claims asserted, the probability of success on the merits of those claims, the inherent litigation risks of the claims, and the costs of litigation. For example, the Trustee has reviewed and considered KORE's Proof of Claim and the status of the Pending Causes of Action (including, but not limited to, the Partial Summary Judgment Order and the Interlocutory Appeal), and has determined that the Pending Causes of Action have already resulted in, and likely will continue to result in, lengthy litigation and discovery and that the Estate could face significant liability if Loyal Source is successful in its Interlocutory Appeal and/or if the defendants in the other Pending Causes of Action have meritorious defenses to the claims therein or the claims prove to be uncollectible after judgments.  The settlement will allow the Trustee to avoid the inherent risks and costs associated with litigation without having to pursue his adversary proceedings and increase the recovery of Proceeds from the Pending Causes of Action.   The Trustee believes in the exercise of his business judgment that the proposed settlement is in the best interest of the Debtor's estate, is fair and equitable, and should be approved.

**B.     <u>Authorization for Sale of Pending Causes of Action</u>**

**i.  The Sale is Within the Sound Business Judgment of the Trustee and Should Be Approved**

20.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business

property of the estate." 11 U.S.C. § 363(b)(1); *see also* Fed. R. Bankr. P. 6004(f)(1) ("[a]ll sales not in the ordinary course of business may be by private sale or by public auction"). Although Section 363(b) does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of an estate's assets, courts in this Circuit and others have required that the decision to sell assets outside of the ordinary course of business be based upon the sound business judgment of the trustee. *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836 (Bankr.E.D.Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales."); *In re Naron & Wagner Chartered*, 88 B.R. 85, 87 (Bankr.D.Md. 1988) ("the court must ... expressly find from the evidence presented before [it] at the hearing a good business reason to grant such an application") (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983)); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674-675 (Bankr.S.D.N.Y. 1989); *In re Abbotts Dairies of Pa.*, 788 F.2d 143, 149-50 (3d Cir. 1986); *In re Tempo Technology*, 202 B.R. 363, 365 (D. Del. 1996), aff'd, 141 F.3d 1155 (3d Cir. 1998).

21.     The "sound business judgment" test requires a trustee to establish four elements: (i) a sound business purpose justifies a sale outside the ordinary course of business; (ii) adequate and reasonable notice of the sale has been provided to interested parties; (iii) the purchase price is fair and reasonable; and (iv) the sale has been proposed in good faith. *W.A. Mallory Co.*, 214 B.R. at 836 (citing *In re WBQ Partnership*, 189 B.R. 97, 102 (Bankr.E.D.Va. 1995); *In re Delaware & Hudson Rwy. Co.*, 124 B.R. 169, 176 (D.Del.1991)); *Abbotts Dairies*, 788 F.2d at 149-150; *In re Phoenix Steel*, 82 B.R. 334, 335-36 (Bankr.D.Del. 1987) (the elements necessary for approval of a § 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith"). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and

circumstances of each case. *Lionel Corp.*, 722 F.2d at 1071; *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 155 (Bankr.D.Del. 1999).

22.    Moreover, recent appellate decisions have expressly authorized the sale of avoidance actions by bankruptcy estates under the authority of Sections 363(b) and 541(a), with such sale affording standing to the purchaser to pursue the respective claims.  In *In the Matter of South Coast Supply Co.*, 91 F.4th 376 (5th Cir. 2024), the Chapter 11 debtor filed a preference action to recover $300,000 in preferential transfers made to an insider. *Id.* at 379.  The bankruptcy court confirmed a plan that provided that the main pre-petition secured lender would abandon its interest in $700,000 of sale proceeds (money that would go to other creditors), in exchange for receiving outright assignment of the preference claim (with no sharing with the estate) and authorization to prosecute the claim on its own behalf. *Id*. at 379-80.  The Fifth Circuit posed it as a sale issue and held that the preference claim could be validly sold, such that the secured lender had standing to continue the action. *Id*. at 380-81, 385.

23.    In support of its holding, the Fifth Circuit in *South Coast Supply* reasoned:

a.    Preference claims are property of the estate under 541(a)(1) and (a)(7), and therefor may be validly sold under 363(b). *Id.* at 381-83.

b.    The trustee's duty is to maximize the value of the estate, which may include and even require the sale of avoidance actions. *Id.* at 383.

c.    The benefit to the estate is the sale price (which may or may not include a portion of future recoveries).  The benefit logically is still apparent even if a creditor is not pursuing the claim for all creditors, because the secured creditor waived its right to administrative expenses and its security interest in sale proceeds. *Id.* at 383.

d.    In approving the sale, the policies of asset value maximization and equitable distribution are satisfied.  Allowing the sale will grant bankruptcy courts more flexibility and may be the most equitable option, because the estate may not have sufficient funds to pursue an action.  The bankruptcy court

12

can determine what is most equitable under the circumstances of each case.[4] *Id.* at 384.

24.    Likewise, the Eighth Circuit's decision in *In re Simply Essentials*, 78 F.4th 1006 (8th Cir. 2023) is factually close to the present case. In *Simply Essentials,* the Chapter 7 trustee filed a combined Rule 9019/Section 363 motion to sell avoidance actions brought against the debtor's owner (Pitman Farms). *Id*. at 1007-08. Pitman Farms' bid was unsuccessful, as the trustee accepted a superior bid from another creditor, and then Pitman Farms appealed. *Id*. The Court held that avoidance actions are property of the estate that can be sold. *Id*. 1009 ("the debtor has an inchoate interest in the avoidance actions prior to the commencement of the bankruptcy proceedings" under Section 541(a)(1); alternatively, "the avoidance actions clearly qualify as property of the estate under subsection (7)"). While Pitman Farms argued that allowing the sale of avoidance actions would violate the trustee's fiduciary duty, the court unequivocally rejected this argument because "[t[he trustee's fiduciary duty is to 'maximize the value of the estate.'" *Id*. at 1010 ("When an estate cannot afford to pursue avoidance actions, the best way to maximize the value of the estate is to sell the actions.").

25.    The sale of the Pending Causes of Action on the terms set forth in the Settlement Agreement satisfies the standards set by applicable law.

26.    The decision to proceed with the sale of the Pending Causes of Action is based upon the Trustee's sound business judgment and should be approved. Ample business justification exists to sell the Pending Causes of Action to KORE pursuant to the Settlement Agreement. As set

---

[4] The Fifth Circuit also determined that the proposed sale was not prohibited by Section 1123(b)(3)(B), which is inapplicable in this Chapter 7 case. The Fifth Circuit determined that because a preference claim is property of the estate that can be sold, the secured lender had standing to pursue the claim as the purchaser regardless of whether it is a "representative of the estate" under Section 1123, as there is no requirement in Section 363 that the purchaser of estate property also be a representative of the estate to have standing to pursue the validly purchased claim.

forth more fully above, the Estate lacks sufficient resources to fund the continued prosecution of these actions, the litigation is complex and expensive, and KORE already holds a first-priority lien on any Avoidance Action recoveries. The Trustee, in the exercise of his business judgment, has determined that the sale to KORE—which includes both KORE's credit bid of its approximately $2.3 million secured claim and the payment of at least $115,000.00 in cash to the Estate— maximizes the value of the Pending Causes of Action for the benefit of all creditors.

27.     The Trustee will market the Pending Causes of Action consistent with his business judgment, which may include outreach to entities that purchase claims or judgments. However, the Trustee believes that it is unlikely a competing offeror will pay more than KORE's offer because KORE is essentially credit bidding its $2.3 million secured claim, plus paying at least $115,000.00 in additional cash consideration. Any competing offer would need to exceed approximately $2.4 million to satisfy Section 363(f), which the Trustee believes is unlikely given the nature of these assets. The proposed sale is for a sound business purpose and represents a reasonable exercise of the Trustee's business judgment. *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984) (a debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons").

28.     Second, the notice procedures described herein are designed to provide adequate notice to all potentially interested parties such that the proposed sale satisfies the second element.

29.     Third, the purchase price is fair and reasonable. KORE is credit bidding its secured claim of approximately $2.3 million—a claim secured by a first-priority lien on all estate assets, including Avoidance Action recoveries—and paying at least $115,000.00 in cash to the Estate. In addition, the Estate will receive a percentage of any recoveries from the Pending Causes of Action

14

pursuant to the terms of the Settlement Agreement. Considering the Estate's lack of resources to fund litigation, the substantial litigation risks, and the fact that KORE already holds a lien on any recoveries, the Trustee believes that the consideration offered is fair and reasonable, thereby satisfying the third element.  The Trustee tested the market and was otherwise unable to obtain any offer for the Pending Causes of Action.

30.     Fourth, as discussed below, the "good faith" element is also satisfied here.

**ii.  The Sale Satisfies Section 363(f) of the Bankruptcy Code**

31.     Section 363(f) of the Bankruptcy Code authorizes debtors to sell property of the estate outside the ordinary course of business free and clear of all liens, claims, encumbrances or other interests in such property of an entity other than the bankruptcy estate if any one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (ii) such entity consents; (iii) such interest is a lien and the price atwhich such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. § 363(f); *see also In re Elliot*, 94 B.R. 343, 345 (E.D.Pa. 1988) ("[S]ection 363(f) is written in the disjunctive" and a court may approve a sale "free and clear" provided at least one of the subsections are met); *In re Bygraph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (stating that "the use of the word" or"…makes the provisions of that section disjunctive").

32.     The Trustee proposes to sell the Pending Causes of Action free and clear of all liens, claims, encumbrances, and interests pursuant to Section 363(f).  The Trustee believes that no liens, claims, encumbrances, or other interests are asserted against the Pending Causes of Action other than (i) the lien held by KORE pursuant to the TIP Orders and the Prepetition Loan Documents

15

and (ii) a subordinated lien of Loyal Source, capped at $17,843.47 per the Sale Order [ECF No. 365, October 1, 2024]. Because KORE is effectively paying more than the amount of its secured claim, Section 363(f)(3) is satisfied. Because KORE is the purchaser and the holder of the only known lien on the Pending Causes of Action, the sale satisfies Section 363(f)(2) (entity consent).

33.    Moreover, even if any other party were to assert a lien or interest in the Pending Causes of Action, the Trustee believes the sale would still satisfy Section 363(f). KORE is credit bidding its approximately $2.3 million secured claim plus paying at least $115,000.00 in additional cash consideration, for a total value exceeding $2.4 million. Any competing offer would need to exceed approximately $2.4 million, the aggregate value of all asserted liens, to satisfy Section 363(f)(3). The Trustee also reserves the right to demonstrate at the hearing that one or more of the other disjunctive elements of Section 363(f) has been satisfied. Accordingly, the proposed sale should be approved free and clear of all liens, claims, encumbrances, and interests.

### iii. The Sale is Proposed in Good Faith and KORE is entitled to the Protections of Section 363(m)

34.    Section 363(m) of the Bankruptcy Code provides for certain protections to be provided to good faith purchasers of assets from debtors pursuant to Section 363(b). Section 363(m) states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

35.    Thus, where the purchase of assets is in good faith, Section 363(m) protects parties from the consequences of the reversal or modification of an authorization of sale. While the Bankruptcy Code does not define "good faith", the Fourth Circuit has held that a good faith

16

purchaser is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *see also Abbotts Dairies*, 788 F.2d at 147. To constitute lack of good faith, a purchaser's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Willemain*, 764 F.2d at 1024 (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct in the course of the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

36.     The Trustee requests that the Court find that KORE is entitled to the protections of a good faith purchaser under Section 363(m). The Settlement Agreement is the product of extensive, arm's-length negotiations between the Trustee and KORE, both represented by experienced counsel. There is no evidence of fraud or collusion between KORE and any other party. KORE is not an insider of the Debtor as that term is defined in Section 101(31) of the Bankruptcy Code, and all negotiations have been conducted on an arm's-length, good faith basis.

### iv. Waiver of Stay Imposed by Bankruptcy Rule 6004(h)

37.     The Trustee requests that the Sale Order be made effective immediately by providing that the stay under Bankruptcy Rule 6004(h) is waived and inapplicable with respect to the sale or assignment of the Assets of the Business.

38.     Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should order otherwise and eliminate or reduce the fourteen (14) day stay period, Collier on Bankruptcy suggests that the fourteen (14) day stay period should be eliminated to allow

17

a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.11, 6006.4 (16th ed. 2013). Waiver of the stay will allow the Order approving this Amended Motion to become effective immediately upon entry on the Court's docket so the Trustee can promptly complete the settlement and sale process outlined in the Settlement Agreement.

## NOTICE

39.     Notice of this motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee, (ii) the KORE's counsel, (iii) Loyal Source Government Services, LLC's counsel; (iv) the parties in the Pending Causes of Action; (v) the Creditors' Mailing Matrix; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002. Due to the urgency of the circumstances surrounding this Amended Motion and the nature of the relief in it, the Trustee respectfully submits that no further notice of this settlement and sale is required.

## STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 9013-2

40.     Pursuant to Rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Trustee states that, in lieu of submitting a memorandum in support of this Motion, the Trustee will rely solely upon the grounds and authorities set forth herein.

41.     On June 17, 2026, the Trustee previously filed a Motion [ECF No. 560] seeking approval of an earlier version of the Settlement Agreement.  Following a status conference on July 15, 2026 on the earlier Motion and an objection filed by Loyal Source Government Services, LLC, the Trustee and KORE executed the amended and restated Settlement Agreement and the Trustee filed this Amended Motion to additionally seek relief under Section 363.

18

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests the following relief:

A.     That the Settlement Agreement attached hereto as **Exhibit A** be approved;

B.     That the Trustee be authorized to assign and sell the Pending Causes of Action to KORE, or any higher bidder, free and clear of all liens, claims, encumbrances and interests;

C.     That the Trustee be authorized to take any and all actions and execute any and all documents necessary and appropriate to effectuate and consummate the Settlement Agreement; and

D.     That the Trustee be granted such other and further relief as is just and equitable.

Dated: August 5, 2026

/s/ *Richard M. Goldberg*
Richard M. Goldberg, Fed. Bar No. 07994
Daniel J. Zeller, Fed. Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4274
Fax: 410-539-7611
Email: rmg@shapirosher.com
        djz@shapirosher.com

*Counsel to Plaintiff Morgan W. Fisher,*
*Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th  day of August, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing will be served electronically by the Court's CM/ECF system on the following:

**Hugh M. (UST) Bernstein**    hugh.m.bernstein@usdoj.gov
**Aaron L. Casagrande**    Aaron.casagrande@Icemiller.com
**Addison J. Chappell**    achappell@milesstockbridge.com
**Robert Paul Charbonneau**    rpc@agentislaw.com,
bankruptcy@agentislaw.com;nsocorro@agentislaw.com
**Michael Collins**    collins@councilbaradel.com
**Strider Dickson**    sdickson@mdswlaw.com
**John Fitzgerald Dougherty**    jdougherty@kg-law.com
**Justin Philip Fasano**    jfasano@mhlawyers.com,
jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmarti
n@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
**Morgan W. Fisher**    trustee@morganfisherlaw.com,
MD65@ecfcbis.com;fisher@premierremote.com
**Jonathan Lawrence Gold**    jgold@baileyglasser.com, sbrogi@dickinson-wright.com
**Richard J Hackerman**    Richard@RichardHackerman.com,
6923530420@filings.docketbird.com;Hackerman.RichardR106256@notify.bestcase.com
**Catherine Keller Hopkin**    chopkin@yvslaw.com,
pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@g
mail.com;hopkincr39990@notify.bestcase.com
**Kevin G. Hroblak**    kevin.hroblak@icemiller.com, madelin.hill@icemiller.com
**Martinis Montrelle Jackson**    martinis.jackson@jlegalservices.com
**Patricia B. Jefferson**    pjefferson@milesstockbridge.com
**Bradley David Jones**    brad.jones@stinson.com
**Shelby Kostolni**    shelby.kostolni@stinson.com
**Lauren Lake**    llake@gfrlaw.com, alazo@gfrlaw.com
**Jung Yong Lee**    jlee@milesstockbridge.com, mhickman@tydings.com
**Jean Evelyn Lewis**    jlewis@kg-law.com, swisthoff@kg-law.com
**Stephen A. Metz**    smetz@offitkurman.com, mmargulies@offitkurman.com
**David Simson Musgrave**    dmusgrave@gfrlaw.com, jojones@gfrlaw.com
**David J. Shuster**    dshuster@kg-law.com, ssohn@kg-law.com
**Lisa Yonka Stevens**    lstevens@milesstockbridge.com
**Paul Sweeney**    psweeney@yvslaw.com,
jbeckman@yvslaw.com;pgomez@yvslaw.com;cadams@yvslaw.com;sweeneypr39990@
notify.bestcase.com;r39990@notify.bestcase.com;vmichaelides@yvslaw.com
**US Trustee - Baltimore**    USTPRegion04.BA.ECF@USDOJ.GOV

/s/ *Richard M. Goldberg*
Richard M. Goldberg