# Exhibit B

# ~~CLAIM SETTLEMENT~~AMENDED AND RESTATED CLAIM SETTLEMENTAND SALE AGREEMENT

This Amended and Restated Claim Settlement and Sale Agreement (this "**Agreement**"), dated as of ~~June~~August ___, 2026, is made and entered into by and among KORE Capital Corporation, a Virginia corporation ("**KORE**"), and Morgan W. Fisher, Esq., in his capacity as trustee (the "**Trustee**") and representative of the estate of Chapter 7 debtor Provizor Federal, Inc., a Maryland corporation (the "**Debtor**"), pending in the United States Bankruptcy Court for the District of Maryland (the "**Bankruptcy Court**"), Case No. 24-11528-DER (the "**Bankruptcy Case**"). This Agreement collectively refers to KORE and the Trustee as the "**Parties**" and each individually as a "**Party**."

## RECITALS

**WHEREAS**, on February 26, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court, thereby commencing the Bankruptcy Case;

**WHEREAS**, prior to the Petition Date, KORE made certain loan advances and provided other financial accommodations to the Debtor pursuant to that certain Revolving Credit and Security Agreement, dated as of October 7, 2021, by and between the Debtor (f/k/a OMV Medical, Inc.) and KORE (the "**Prepetition Loan Agreement**"), and all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of KORE in connection with the Prepetition Loan Agreement (all collectively, the "**Prepetition Loan Documents**");

**WHEREAS**, as of the Petition Date, (i) the Debtor was indebted under the Prepetition Loan Documents to KORE in the aggregate outstanding principal amount of Two Million Two Hundred Twenty-one Thousand Three Hundred Sixty-one and 29/100 Dollars ($2,221,361.29) plus interest accrued, accruing or chargeable with respect thereto and other charges, including, but not limited to, any contingent or unliquidated liabilities (the "**Prepetition Secured Obligations**"), and (ii) the Prepetition Secured Obligations were secured pursuant to the Prepetition Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by the Debtor to KORE under the Prepetition Loan Documents, in all of the existing and after-acquired assets of the Debtor as more fully set forth in the Prepetition Loan Documents;

**WHEREAS**, after the Petition Date, KORE provided financing to the Debtor pursuant to that certain Senior Secured Superpriority Priming Debtor-in Possession Revolving Credit and Security Agreement, dated as of February 25, 2024, by and among the Debtor and KORE, and the Bankruptcy Court entered an Order approving such financing;

**WHEREAS**, on May 16, 2024, the Bankruptcy Court converted the Bankruptcy Case to Chapter 7 and, immediately thereafter, Morgan W. Fisher was appointed Chapter 7 Trustee for the Debtor;

**WHEREAS**, on May 20, 2024, the Trustee filed an Emergency Motion [ECF 234] in the Bankruptcy Case for authority to, in part, obtain post-conversion financing for an interim period

from KORE pursuant to that certain Senior Secured Superpriority Priming Trustee-in-Possession Revolving Credit and Security Agreement, dated as of May 20, 2024, by and among the Trustee and KORE (the "**TIP Credit Agreement**");

**WHEREAS**, in its May 22, 2024 Order [ECF 246] on the Emergency Motion, the Bankruptcy Court, in part, (i) approved the TIP Credit Agreement, subject to certain limitations, and (ii) ordered that KORE was not required to file a proof of claim in the Bankruptcy Case and the entry of that Order shall be deemed to constitute a timely filed proof of claim (the "**KORE Proof of Claim**" and the claim embodied therein, "**KORE's Claim**"), the full amount of KORE's Claim being, as of May 31, 2026, $2,339.239.36, plus legal fees;

**WHEREAS**, KORE's Claim includes, but is not limited to, all liens, rights, priorities, and protections granted to or in favor of KORE with respect to the Prepetition Collateral (as defined in the May 22, 2024 Order, which includes all existing and after-acquired assets of the Debtor) as set forth in the Prepetition Loan Documents;

**WHEREAS**, pursuant to the May 22, 2024 Order, the Trustee is holding the Loyal Source Escrow Account, in which the sum of $830,906.00 is on deposit;

**WHEREAS**, the May 22, 2024 Order provides that, unless and until the entry of a final and non-appealable order of the Bankruptcy Court or another court of competent jurisdiction directing the disposition of the Loyal Source Escrow Account, the Trustee shall retain the Loyal Source Escrow Amount ($830,906.00) in the Loyal Source Escrow Account;

**WHEREAS**, there are pending three (3) active complaints filed by the Trustee, as plaintiff, against certain defendants—Loyal Source, Impel Capital et al., and LCMH et al.— in the Bankruptcy Case (the "**Pending Causes of Action**");

**WHEREAS**, one of the Pending Causes of Action is the Trustee's Complaint to Avoid and Recover Preferential Transfers, Adversary No. 24-00233 (the "**Loyal Source Cause of Action**"), in which the Trustee sought to avoid the grant/imposition of the constructive trust in favor of Loyal Source and sought judgment in favor of the Trustee and against Loyal Source in an amount not less than $830,906.00, plus interest and costs;

**WHEREAS**, the other Pending Causes of Action consist of (a) the Trustee's Complaint in Adversary No. 26-00039 for avoidance and recovery of fraudulent transfers and preferences against LCMH et al., in varying amounts (the "**LCMH Cause of Action**") and (b) the Trustee's Complaint in Adversary No. 26-00040 for avoidance and recovery of fraudulent transfers and preferences, fraud, breach of directors standard of care, breach of duty of loyalty and breach of fiduciary duty against Impel Capital et al. (the "**Impel Cause of Action**");

**WHEREAS**, with respect to the Loyal Source Cause of Action, on February 2, 2026, following a motion for summary judgment filed by Loyal Source (the "**Summary Judgment Motion**") and an opposition and cross motion for summary judgment filed by the Trustee (the "**Opposition and Cross Motion for Summary Judgment**"), the Bankruptcy Court entered an Order (i) denying the Summary Judgment Motion, (ii) granting the Cross Motion for Summary

022794.50190.001.04022988.50190.001.02
15156318.2  49673/150192

Judgment, and (iii) entering partial summary judgment in favor of the Trustee and against Loyal Source on the "transfer" issue referenced therein—i.e., the Bankruptcy Court determined that there is no dispute of material fact and the Bankruptcy Court found that as a matter of law a transfer to Loyal Source occurred for purposes of Section 547 of the Bankruptcy Code when the District Court entered the Confirmation Order (as defined in the Partial Summary Judgement Order) (such Order, the "**Partial Summary Judgment Order**");

WHEREAS, on February 15, 2026, Loyal Source filed a Motion for Leave to Appeal Bankruptcy Court Order Granting Partial Summary Judgment in Favor of Plaintiff and a corresponding Notice of Appeal (collectively, the "**Interlocutory Appeal Motion**");

.On ~~WHEREAS, on~~ March 2, 2026, the Trustee filed a Response in Opposition to the Interlocutory Appeal Motion (the "**Opposition**") and, on March 16, 2026, Loyal Source filed a Reply in Support of its Interlocutory Appeal Motion (collectively with the Interlocutory Appeal Motion and the Opposition, the "**Interlocutory Appeal Motion, Opposition, and Reply**"). The District Court has authorized the interlocutory appeal to proceed and a briefing schedule has been set;

WHEREAS, the Trustee has reviewed KORE's Proof of Claim and the status of the Pending Causes of Action (including, but not limited to, the Partial Summary Judgment Order and the Interlocutory Appeal Motion, Opposition, and Reply), and has determined that the Pending Causes of Action have already resulted in, and likely will continue to result in, lengthy litigation and discovery and the Estate could face significant liability if Loyal Source is successful in its Interlocutory Appeal and/or if the defendants in the other Pending Causes of Action have meritorious defenses with respect to the claims therein;

~~WHEREAS, the Bankruptcy Court has authorized the Trustee to operate the Debtor's business pursuant to Section 721 of the Bankruptcy Code;~~
WHEREAS, the Parties desire to settle KORE's Proof of Claim;

WHEREAS, in consideration for, *inter alia*, KORE agreeing to (a) settle its claim, (b) prosecute the Pending Causes of Action on its own behalf ~~of~~with a sharing of recoveries, if any, with the Trustee ~~and Estate~~, (c) assume all Fees and Expenses in connection with the prosecution of the Pending Causes of Action, and (d) provide the Estate with a percentage recovery of Proceeds of the Pending Causes of Action, all on the terms and conditions set forth herein, the Trustee desires to settle KORE's Proof of Claim and sell to KORE, free and clear of any liens, interests, and encumbrances, an undivided one hundred percent (100%) interest in the Pending Causes of Action and Proceeds therefrom on the terms and conditions set forth herein, including a sharing arrangement on recoveries, if any; ~~and~~

WHEREAS, the Parties desire to cooperate for the purpose of recovering Proceeds from the Pending Causes of Action (whether by settlement, litigation or otherwise) pursuant to the terms and conditions set forth herein.;

WHEREAS, on June 17, 2026, the Parties entered into that certain Claim Settlement and Sale Agreement (the "**Original Agreement**"); and

3

WHEREAS, the Parties now desire to amend and restate the Original Agreement upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the covenants and agreements contained herein and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

## AGREEMENT

### ~~Section I.~~ Section I.    Definitions

~~1.01~~ 1.01        Definitions. Unless otherwise specified, each undefined capitalized term shall have the meaning given to it in the Bankruptcy Code. As used in this Agreement, the following terms have the following meanings:

~~(a)~~ (a)    "**9019 Order**" means a Final Order granting the 9019 Motion.

~~(b)~~ (b)    "**9019 Motion**" has the meaning given to such term in Section 6.02.

~~(c)~~ (c)    "**Administrative Claim**" means a Claim for costs and expenses of administration pursuant to Sections 502(h) 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code.

~~(d)~~ (d)    "**Avoidance Actions**" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including Sections 502, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

~~(e)~~ (e)    "**Bankruptcy Case**" has the meaning in the preamble.

~~(f)~~ (f)    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101- 1532. 18.

~~(g)~~ (g)    "**Bankruptcy Court**" has the meaning in the preamble.

~~(h)~~ (h)    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated under Section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

~~(i)~~ (i)    "**Causes of Action**" means all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, in each case held by the Estate, whether known or unknown, matured or unmatured, fixed or

4

~~022794.50190.001.04~~022988.50190.001.02
~~15156318.2  49673/150192~~

contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case.

(j) (j)    **"Claim"** means any claim, as such term is defined in Section 101(5) of the Bankruptcy Code, against the Debtor.

(k) (k)    **"Debtor"** has the meaning in the preamble.

(l) (l)    **"Estate"** means the estate created for the Debtor in its Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

(m) (m)        **"Estate Proceeds"** has the meaning in Section V.

(n) (n)    **"Fees and Expenses"** has the meaning in Section 4.01(a).

(o) (o)    **"Final Order"** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for certiorari, or motion for a new trial, review, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

(p) (p)    **"Gross Proceeds"** has the meaning in Section 5.01.

(q) (q)    **"Impel Capital et al."** means Impel Capital Management, LLC (f/k/a Impel Capital, LLC), a Delaware limited liability company and an Insider of the Debtor ("**Impel Management**"), OMV Holdings, LLC, a Maryland limited liability company and an Insider of the Debtor ("**OMV Holdings**"), Chestnut Business Consulting, LLC, a South Carolina limited liability company, BW Capital Advisors LLC t/a BW Capital Advisors, a District of Columbia limited liability company, Lamar Barnes, an Insider of the Debtor ("**Barnes**"), and Lonnie B. Chestnut, III, an Insider of the Debtor ("**Chestnut**").

(r) (r)    **"Insiders"** means all of Debtor's members, board members, partners, general partners, officers, persons in control, directors, and relatives of such general partners, directors, officers, or persons in control of Debtor, including, but not limited to, Impel Management, OMV Holdings, Barnes, Chestnut, LCMH, LC8, Faustin, and any of the foregoing entities' subsidiaries, directors, officers, assigns, agents, transferees, and affiliates,

022794.50190.001.04 022988.50190.001.02
15156318.2  49673/150192

and any of the foregoing persons' or entities' aliases, and, for the avoidance of doubt, shall also include any 'insider' as that term is understood under Section 101(31) of the Bankruptcy Code or as that term is understood in applicable common law.

(s) (s)    **"KORE's Proceeds"** has the meaning in Section V.

(t) (t)    **"Claim"** and **"KORE's Claim"** have the meanings given in the recitals.

(u) (u)    **"LCMH et al."** means LCMH, LLC (n/k/a Ardor Group Holdings, LLC), a Wyoming limited liability company and Insider of the Debtor ("**LCMH**"), LC Eight Consulting Group, LLC t/a LC Eight, LLC or LC Eight, a Wyoming limited liability company and (at all relevant times) an Insider of the Debtor ("**LC8**"), and G. Corey Faustin, a Maryland resident and (at all relevant times) an Insider of the Debtor ("**Faustin**").

(v) (v)    **"Litigation Updates"** has the meaning in Section 4.05.

(w) (w)        **"Loyal Source"** means Loyal Source Government Services, LLC, a Florida limited liability company, a creditor of the Debtor.

(x) (x)    **"Net Proceeds"** has the meaning in Section 5.02.

(y) (y)    **"Pending Causes of Action"** has the meaning in ~~Section 3.01~~the Recitals.

(z) (z)    **"Pending Causes of Action Work Product"** has the meaning in Section 4.06.

(aa) (aa)        **"Proceeds"** means any form of property, including, but not limited to, legal or equitable interests, cash, interest, penalties, legal fees, fees, damages, settlements, reimbursements, costs, expenses, sanctions, penalties, monetary award, securities, membership interests, partnership interests, liens, security interests, contingent interests, rights or other property paid, distributed by, or on behalf of any party in satisfaction, settlement, or resolution of a cause of action.

1.02 1.02        Exhibit Incorporated by Reference. The exhibit attached hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibit.

## ~~Section II.~~ Section II. Settlement of KORE's Claim

2.01 2.01        Settlement of KORE's Claim. Upon entry of the 9019 Order, KORE shall:

(a) (a)    pay to the Trustee One Hundred Fifteen Thousand and 0/100 Dollars ($115,000.00) no later than two (2) days after the date of the 9019 Order;

6

022794.50190.001.04022988.50190.001.02
15156318.2 49673/150192

(b) (b)    file a notice of voluntary withdrawal of KORE's Claim pursuant to the Bankruptcy Rules, with prejudice, no later than two (2) days after the date of the 9019 Order;

(c) (c)    not file or assert any claim arising from or related to KORE's Claim in the Bankruptcy Case or any settlement payments pursuant to this Section II or any other settlement payments in this Agreement;

(d) (d)    not file any claim against the Estate in the Bankruptcy Case on account of pre-petition or post-petition conduct of the Debtor that is currently known, or reasonably should be known, by KORE; and

(e) (e)    not seek any distribution from the Estate on account of KORE's Claim.

For the avoidance of doubt, the payment by KORE to the Trustee pursuant to Section 2.01 herein shall constitute property of the Estate, free and clear of any lien, claim, or encumbrance of KORE under the Prepetition Loan Documents, the TIP Credit Agreement, or otherwise.

2.02 2.02    Distribution of Funds.  The distribution of any amounts paid to the Estate pursuant to this Agreement shall be subject to further Order of the Bankruptcy Court.

2.03 2.03    Support of Trustee's Settlement and Sale. Upon entry of the 9019 Order, KORE shall support and/or not take any action adverse to the Trustee's efforts to settle KORE's Claim and sell the Pending Causes of Action and Proceeds thereof, each as described, and on the terms and conditions set forth, herein; *provided, however*, that KORE shall not be required to take any action that it reasonably determines may interfere with and/or adversely affect the prosecution of the Pending Causes of Action.

2.04 2.04    Time is of the Essence. The Parties acknowledge and agree that time is of the essence with respect to each party's performance of its obligations under this Agreement.

**Section III. Section III.        Transfer and Sale of the Pending Causes of Action and Proceeds Thereof**

3.01 3.01    Pending Causes of Action. The Trustee, in accordance with his statutory duties under the Bankruptcy Code, has undertaken to identify and investigate any Causes of Action the Estate may have against Loyal Source, LCMH et al., and Impel Capital et al., and Insiders thereof (the "initiated the Pending Causes of Action").  The Trustee hereby represents that he has made an informed and independent determination that, in his reasonable business judgment:

(a) (a)    the time and expense associated with administering and prosecuting the Pending Causes of Action would deplete the limited resources of the Estate;

(b) (b)    the Estate lacks sufficient resources to prosecute the Pending Causes of

7

Action;

(c) (c) such litigation is complex, fact-intensive, and time-consuming; and

(d) (d) because success is far from assured, the Estate may not recover sufficient proceeds to justify prosecuting the Pending Causes of Action and, even if the Trustee prevails, collection is unlikely (except in the case of the Loyal Source Cause of Action.

3.02 3.02    Transfer of the Pending Causes of Action.

(a) (a) The Trustee represents that he is aware that KORE (i) believes that the Pending Causes of Action have significant face value, and (ii) is willing to undertake the time, expenses, and risks expense and risk involved in prosecuting the Pending Causes of Action.

(b) (b) The Trustee represents and warrants that (i) the Estate is the sole legal and beneficial owner of, and has good and marketable title to, all rights in connection with the Pending Causes of Action, including the Proceeds thereof, (ii) KORE has a first position security interest in the Pending Causes of Action, (iii) that no party has asserted any lien, security interest, contingent interest, equitable interest, participation, setoff, or encumbrance on the same that is senior to KORE's Claim, which shall be settled in accordance with Section 2.01 herein, and (iii iv) the Trustee has full right, power, and authority to transfer and assign the Pending Causes of Actions and Proceeds thereof.

(c) (c) Accordingly, in consideration for (i) the resolution and settlement of KORE's Claim as set forth in Section 2.01 herein, (ii) KORE's support of the Trustee's settlement and sale as described in Section 2.03 herein, (iii) the Estate Proceeds, and (iv) KORE's other affirmative obligations and covenants set forth in this Agreement, the Trustee hereby agrees, in his business judgment, to sell, transfer, convey, and assign, subject to the Estate Proceeds, the Estate's rights, title, right and interest in the Pending Causes of Action and Proceeds thereof, including, but not limited to, those for the recovery of money and property under claims or theories of fraudulent transfer, preferential transfer, equitable subordination, breach of fiduciary duty, equitable lien, and constructive trust, to KORE.

3.03 3.03    Ownership of the Pending Causes of Action. Following the sale, transfer, conveyance, and assignment from the Estate to KORE of the Pending Causes of Action and Proceeds thereof, as set forth in Section 3.02 herein:

(a) (a) KORE shall be the sole owner, free and clear of any and all liens, claims, and encumbrances, of the Pending Causes of Action and Proceeds thereof (subject to the Estate Proceeds), which shall be considered KORE's property; and

022794.50190.001.04 022988.50190.001.02
15156318.2  49673/150192

(b) (b)  KORE, as owner of the Pending Causes of Action, shall have full control over the investigation, prosecution, litigation strategy, negotiations, settlement determinations, resolution, and disposition of the Pending Causes of Action; and.  However, KORE shall use reasonably commercial efforts to prosecute the Pending Causes of Action, making its litigation and settlement determinations based upon how each such litigation unfolds in the same manner it otherwise would in any other litigation matter where KORE was a party.

(c) Subject to the Estate Proceeds and all rights of the Estate and Trustee in this Agreement, KORE may transfer its interest in the Pending Causes of Action to any special purpose vehicle, LLC, or trust ("**SPV**") that KORE currently controls or subsequently establishes for the purposes of prosecuting the Pending Causes of Action, and such SPV shall assume all rights, powers, and identities that KORE exercises under this Agreement, subject in each case to Section IV herein.

3.04 3.04    Good Faith Purchaser

(a) (a)  The Trustee's sale, transfer, and assignment to KORE of the Pending Causes of Action and Proceeds thereof as set forth herein is made as is, with no representations or guarantees to KORE as to their value of prospect for recovery.

(b) (b)  The Trustee agrees that the consideration provided by KORE under this Agreement and as set forth in Section 2.01 and Section 3.02(c) herein is fair to the Estate, is the best and highest offer for the Pending Causes of Action and Proceeds thereof, is made in good faith, and agrees that KORE meets the criteria of a "good faith purchaser" for purposes of Section 363 of the Bankruptcy Code and specifically Section 363(m).

Section IV. Section IV.        **Prosecution of the Pending Causes of Action**

4.01 4.01    Fees and Expenses.

(a) (a)  KORE shall be solely responsible for all fees and expenses, including attorneys' fees and litigation costs, relating to the pursuit and prosecution of the Pending Causes of Action (the "**Fees and Expenses**").

(b) (b)  KORE shall have no ability to seek compensation from the Estate, including on an Administrative Claim basis, for Fees and Expenses incurred in connection with prosecuting the Pending Causes of Action.

(c) (c)  KORE shall have full discretion over the firms, businesses, consultants, agents, advisors, attorneys, accountants, financial advisors, investigators, or other professionals it retains relating to its prosecution, evaluation, and resolution of the Pending Causes of Action.

9

(d) (d) KORE shall separately account for fees and expenses incurred that are unrelated to the Pending Causes of Action.

4.02 4.02    KORE's Standing to Prosecute the Pending Causes of Action. The Parties hereby agree that:

(a) (a) In its prosecution of the Pending Causes of Action and as the sole owner of the Pending Causes of Action, KORE shall have standing to appear on behalf of, and as representative of, the Trustee and Estate, in the Bankruptcy Court, or other court of competent jurisdiction, for all purposes, including, but not limited to, prosecuting, settling, or resolving the Pending Causes of Action; and

(b) (b) KORE shall be considered a party-in-interest in the Bankruptcy Case and shall be able to raise and be heard on any issue. solely to the extent of: (i) the Pending Causes of Action, (ii) any other adversary proceeding or contested matter in which KORE is a party, including, without limitation, matters involving Loyal Source, and (iii) matters related to the sharing of any Proceeds as set out in Section V below.

4.03 4.03    Assignment of Trustee Powers in Connection with Pending Causes of Action.

(a) (a) The Trustee hereby assigns its avoidance powers under Chapter 5 of the Bankruptcy Code to KORE solely for purposes of KORE's prosecution and disposition, on behalf of, and as a representative of, the Trustee and Estate, of the Pending Causes of Action.

(b) (b) As assignee, the Parties agree KORE shall have the power to sue in the Trustee's name and represent the Trustee for purposes of the Pending Causes of Action; *provided, however*, that the Trustee shall remain the nominal plaintiff in the Pending Causes of Action.

(c) (c) Should KORE's standing or ability to represent the Trustee in connection with the Pending Causes of Action be found invalid or deficient, in whole or in part, the Trustee agrees to cooperate with KORE to cure such deficiency so that KORE can pursue the Pending Causes of Action for the benefit of the Estate.

4.04 4.04    Cooperation.

(a) (a) The Trustee agrees, consistent with his statutory duties under the Bankruptcy Code, to follow KORE's reasonable instructions to cooperate with KORE in pursuing the Pending Causes of Action as set forth herein, such as by recovering property of the Estate and/or liquidating Proceeds of the Pending Causes of Action, which shall include, but not be limited to, sharing of any documents and information in his possession or readily

10

022794.50190.001.04 022988.50190.001.02
15156318.2 49673/150192

obtainable relating thereto.

(b) (b) The Trustee agrees to not take any action, or omit to take any action, which would reasonably be expected to materially impede or frustrate KORE's pursuit of the Pending Causes of Action; *provided, however*, that the Trustee may take, or refrain from taking, any and all actions as are necessary to comply with his statutory duties under the Bankruptcy Code.

4.05 4.05    Litigation Updates.

(a) (a) KORE hereby covenants and agrees that it shall provide the Trustee with periodic updates—no less frequently than every ninety (90) days—regarding the status of the Pending Causes of Action, including (i) a summary of the current status of the Pending Causes of Action, (ii) a brief description of any motions filed, hearings scheduled, or rulings issued by the Bankruptcy Court, (iii) a summary of any settlement discussions or offers, to the extent permissible under applicable law and any confidentiality obligations, and (iv) a good faith estimate of the anticipated timeline for resolution of each Pending Cause of Action (collectively, the "**Litigation Updates**").   KORE further covenants and agrees that the Trustee may consult KORE's counsel with respect to its prosecution of the Pending Causes of Action.

(b) (b) The Trustee agrees that all information received pursuant to this provision shall be treated as confidential and shall not be disclosed to any third party without the prior written consent of KORE, except as may be required by applicable law, regulation, or order of a court or governmental authority of competent jurisdiction.  In the event that the Trustee becomes legally compelled to disclose any such information, the Trustee shall provide KORE with written notice of such requirement so that KORE may seek an appropriate protective order or other remedy.

(c) (c) KORE's obligation to provide Litigation Updates pursuant to Section 4.05 shall continue until the earlier of (i) the final resolution of all of the Pending Causes of Action, including the exhaustion or expiration of all applicable appeal periods, or (ii) the termination of this Agreement in accordance with its terms, unless, in either case, the Parties agree in writing that such obligation shall survive such termination.

4.06 4.06    Trustee Work Product.

(a) (a) The Trustee hereby covenants and agrees that it shall provide KORE, upon reasonable request from KORE, with any work product prepared by the Trustee and/or its counsel related to the Pending Causes of Action (the "**Pending Causes of Action Work Product**").

(b) (b) The Pending Causes of Action Work Product shall include, but not be

11

022794.50190.001.04 022988.50190.001.02
15156318.2  49673/150192

limited to, all documents, materials, deliverables, analyses, reports, memoranda, and other tangible or intangible results of any kind, in whatever form or medium, that are conceived, created, developed, prepared, or produced by or on behalf of the Trustee in connection with the Pending Causes of Action.

(c) (c)    KORE agrees that all information received pursuant to this provision shall be treated as confidential and shall not be disclosed to any third party without the prior written consent of the Trustee, except as may be required by applicable law, regulation, or order of a court or governmental authority of competent jurisdiction.    In the event that KORE becomes legally compelled to disclose any such information, KORE shall provide the Trustee with written notice of such requirement so that the Trustee may seek an appropriate protective order or other remedy.

(d) (d)    The Trustee's obligation to provide Pending Causes of Action Work Product pursuant to Section 4.06 shall continue until the earlier of (i) the final resolution of all of the Pending Causes of Action, including the exhaustion or expiration of all applicable appeal periods, or (ii) the termination of this Agreement in accordance with its terms, unless, in either case, the Parties agree in writing that such obligation shall survive such termination.

4.07 Alternative Prosecution Model. The Parties agree that prosecution of the Pending Causes of Action is of paramount importance and in the best interest of the Estate. Therefore, if the Parties determine that KORE's ability to prosecute the Pending Causes of Action on behalf of the Estate is subject to a successful or credible challenge or is unworkable or impracticable, the Parties agree to work in good faith to pursue an "**Alternative Prosecution Model**" whereby the Trustee will retain special litigation counsel of KORE's choice, and, through such counsel, prosecute the Pending Causes of Action, at KORE's expense. The Alternative Prosecution Model shall, in all other respects, preserves the basic economic deal embodied in this Agreement.

4.07    INTENTIONALLY DELETED

~~Section V.~~ **Section V.**    **Proceeds of the Pending Causes of Action**

~~5.01~~ 5.01        Division of Gross Proceeds from Loyal Source Cause of Action.    The Proceeds of the Loyal Source Cause of Action (including the Loyal Source Escrow Account) received by KORE pursuant to a ~~damages award by~~or order of a court of competent jurisdiction after exhaustion of all appeals (or time for such appeals having expired), or pursuant to a binding settlement agreement, which shall be free and clear from any liens, encumbrances or claims from any other party in interest, including assertion of Administrative Claims, paid prior to the payment of any Fees and Expenses are herein referred to as the "**Gross Proceeds**".  The Gross Proceeds from the Loyal Source Cause of Action shall be divided as follows:

~~022794.50190.001.04~~022988.50190.001.02
~~15156318.2~~ ~~49673/150192~~

(a) (a) One Hundred Fifteen Thousand and 0/100 Dollars ($115,000.00) of the Gross Proceeds and five percent (5%) of the Gross Proceeds from the Loyal Source Cause of Action to the Estate ("**Estate Gross Proceeds**"); and

(b) (b) The remaining Gross Proceeds thereafter to KORE ("**KORE Gross Proceeds**")

For the avoidance of doubt, KORE shall be responsible for payment in full of the Fees and Expenses with respect to the Loyal Source Cause of Action.

5.02 5.02    Division of Net Proceeds from LCMH et al. Cause of Action and Impel Capital et al. Cause of Action. After payment in full of the Fees and Expenses, the remaining Proceeds (the "**Net Proceeds**"), which shall be free and clear from any liens, claims, and encumbrances, including any assertion of Administrative Claims, of the LCMH et al. Cause of Action and the Impel Capital et al. Cause of Action shall be divided as follows:

(a) (a) 95% to KORE ("**KORE Net Proceeds**"); and

(b) (b) 5% to the Estate ("**Estate Net Proceeds**").

The Estate Gross Proceeds and the Estate Net Proceeds shall be collectively referred to herein as the "**Estate Proceeds**" and the KORE Gross Proceeds and the KORE Net Proceeds shall be collectively referred to herein as the "**KORE Proceeds**."

An illustrative payment waterfall describing the payments set forth in this Section V is attached hereto as **Exhibit A**.

5.03 5.03    Distribution of Proceeds.  The distribution of any Proceeds collected by the Estate pursuant to this Section V shall be subject to further Order of the Bankruptcy Court.

5.04 5.04    KORE Proceeds.  The KORE Proceeds are the only Proceeds or other amounts that KORE has a right to receive pursuant to this Agreement.  KORE has no right to any other amounts collected by the Trustee in the Bankruptcy Case or otherwise prior to or after the date hereof and any such other amounts collected by the Trustee in the Bankruptcy Case or otherwise are not subject to any Claim by KORE.

**Section VI. Section VI.          9019 Motion**

6.01 6.01    The Agreement is in the best interests of the Estate. The Trustee agrees, in the exercise of his business judgment, that the settlements in this Agreement, including KORE's prosecution of the Pending Causes of Action, are reasonable, fair, and in the best interests of the Estate. The Trustee further agrees he has all necessary powers to enter into this Agreement and bind the Estate (subject to any necessary Bankruptcy Court approvals), and that entry into this Agreement is consistent with his statutory duties under the Bankruptcy Code.

6.02 6.02    Combined Bankruptcy Rule 9019 and Section 363 Sale Motion.

13

022794.50190.001.04022988.50190.001.02
15156318.2  49673/150192

(a) (a) As soon as reasonably practicable following execution of the Agreement, but in any event no later than five (5) business days following the date hereof, the Trustee shall file a motion pursuant to Rule 9019 of the Bankruptcy Rules and Section 363 of the Bankruptcy Code, together with required supporting papers and required notices, with the Bankruptcy Court seeking approval of the settlements and transfers contained in the Agreement (the "9019 **Motion**").

(b) (b) The Parties shall exercise best efforts to obtain Bankruptcy Court approval in the form of the 9019 Motion (an "**Order**"), and any other courtCourt approvals that may be required, including a motion under Bankruptcy Code Sections 105, 363, or 554, that isare acceptable to both Parties and that reflects the terms of the Agreement to the satisfaction of both Parties.

(c) (c) The 9019 Order shall include a finding that KORE has standing to prosecute the Pending Causes of Action on behalf of, and in the name of, the Trustee, as set forth herein, with the Trustee remaining as nominal plaintiff of the Pending Causes of Action with the sharing of Proceeds as otherwise set forth in this Agreement.

Section VII. Section VII.        Termination

7.01 7.01        Termination. Except as provided in Sections 7.02 and 7.03 below, this Agreement may be terminated by KORE or the Trustee, upon five (5) business days' prior written notice delivered to the other aforementioned Party within ten (10) business days after the occurrence of any of the following events (each a "**Termination Event**"):

(a) (a) At any time prior to or after the entry of a 9019the **Order** as described in Section 6.02 herein:

(i) (i) following the delivery of written notice thereof by a nonbreaching Party, of the occurrence of a material breach by any of the Parties of any of its obligations, representations, warranties, covenants or commitments set forth in this Agreement that is either unable to be cured or is not cured within five (5) business days following the delivery of such notice; and

(ii) (ii) the closure, dismissal, or conversion of the Bankruptcy Case., if any such event occurs prior to the entry of the Order; and

(iii)        the Trustee obtains a higher and better offer for the Pending Causes of Action, in the Trustee's sole discretion, and the Trustee chooses to proceed with such other offer instead of this Agreement in the Bankruptcy Court.

14

022794.50190.001.04022988.50190.001.02
15156318.2 49673/150192

~~For the avoidance of doubt, KORE's obligations under Section 2.01 herein shall survive any termination of this Agreement occurring after the entry of a 9019 Order as described in Section 6.02 herein.~~

~~(b) At any time prior to the entry of a 9019 Order as described in Section 6.02 herein:~~

~~(i) any Party publicly disavows any of the terms set forth herein or enters into, or publicly supports, a proposed transaction materially inconsistent with such terms;~~

~~(ii) the approval, recommendation, or any public statement in support by the Trustee into any direct negotiations, any agreement, agreement in principle, understanding, term sheet, letter of intent, purchase agreement, option or similar contract, instrument or arrangement with respect to the subject matter of this Agreement that is materially inconsistent with this Agreement;~~

~~(iii) removal or replacement of the Trustee, including pursuant to Bankruptcy Code Section 324;~~

~~(iv) the failure to obtain a 9019 Order as described in Section 6.02 above after two (2) attempts; and~~

~~(v) the determination by KORE that the Pending Causes of Action have been fully prosecuted, disposed of, or settled, or that any remaining Causes of Action should not be pursued.~~

~~Should KORE exercise its right to terminate this Agreement pursuant to Section 7.01(b)(v) herein with respect to any Pending Cause of Action~~Until entry of the Order, KORE acknowledges and agrees that (x) the Trustee shall ~~then~~ have the absolute right to fully investigate, prosecute, negotiate, settle, or resolve any ~~such~~ Pending Cause of Action on behalf of, and as representative of, the Estate in the Bankruptcy Court (or other court of competent jurisdiction, for all purposes) ~~and sole ownership of any such Pending Cause of Action shall revert back to the Trustee and KORE shall execute and deliver to the Trustee any and all such agreements and documents effectuating such reversion of ownership,~~, and (y) the division of Proceeds of any such Pending Cause of Action as described in Section V herein shall be null and void—i.e., the Trustee shall then be entitled to all Proceeds of any such Pending Cause of Action.

~~7.02~~ 7.02    No Termination Based on Own Breach. No Party may terminate this Agreement upon a Termination Event if such Termination Event is the result of such Party failing to perform or comply in any material respect with the terms and conditions of this Agreement.

~~7.03~~ 7.03    Fiduciary-Out. The Trustee may terminate this Agreement if the Trustee reasonably determines a competing offer provides better and/or higher consideration to the

15

~~022794.50190.001.04~~022988.50190.001.02
~~15156318.2~~ 49673/150192

Estate than this Agreement and is in the best interests of the Estate.  For the avoidance of doubt, representations made by the Trustee in this Agreement shall survive any termination by the Trustee of this Agreement.

### ~~Section VIII.~~ Section VIII.    Miscellaneous

~~8.01~~ 8.01    GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM. THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MARYLAND APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court (or court of proper appellate jurisdiction) (the "**Chosen Court**"), and solely in connection with claims arising under this Agreement: (a) irrevocably submits to the exclusive jurisdiction of the Chosen Court; (b) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (c) waives any objection that the Chosen Court is an inconvenient forum or does not have jurisdiction over any Party hereto or constitutional authority to finally adjudicate the matter.

~~8.02~~ 8.02    Waiver of Jury Trial. EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

~~8.03~~ 8.03    Entire Agreement. This Agreement constitutes the entire agreement among the Parties with respect to the transactions contemplated herein and supersedes all prior agreements, oral, or written, among the Parties with respect thereto.

~~8.04~~ 8.04    Headings. The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

~~8.05~~ 8.05    Rules of Construction. When a reference is made in this Agreement to a section or exhibit, such reference shall be to a section or exhibit, respectively, of or attached to this Agreement unless otherwise indicated. Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement, (c) the words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." "Writing," "written" and comparable terms refer to printing, typing and other means of reproducing words (including electronic media) in a visible form, and any requirement that any notice, consent or other information shall be provided "in writing" shall include email. Any reference to "business day" means any day, other than a Saturday, a Sunday or any other day on which banks located in New York, New York are closed for business as a result of federal, state or local holiday and any other reference today means a

16

~~022794.50190.001.04~~022988.50190.001.02
~~15156318.2  49673/150192~~

calendar day.

8.06 8.06     Interpretation; Representation by Counsel. This Agreement is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by, or had the opportunity to be represented by, counsel during the negotiations and drafting of this Agreement and, therefore, waive the application of any law, regulation, holding or rule of construction (a) providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document or (b) any Party with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel.

8.07 8.07     Successors and Assigns; No Third-Party Beneficiaries. This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable. There are no third-party beneficiaries under this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity.

8.08 8.08     Notices. All notices hereunder shall be deemed given if in writing and delivered by electronic mail, courier, or registered or certified mail (return receipt requested) (and if by any method other than electronic mail, then with a copy by electronic mail) to the following addresses (or at such other addresses as shall be specified by like notice):

(i) (i)   If to KORE:

KORE Capital Corporation
Attn: Kwesi Rogers
6701 Democracy Boulevard, Suite 300
Bethesda, Maryland 20817
Email: Kwesi.rogers@korecc.com

with a copy (which shall not constitute notice) to:

Gordan Feinblatt LLC
Attn: David S. Musgrave, Esq.
1001 Fleet Street, 7th Floor
Baltimore, Maryland 21202
Email: dmusgrave@gfrlaw.com

(ii) (ii) If to the Trustee:

Law Offices of Morgan Fisher LLC
Attn: Morgan W. Fisher, Esq., Chapter 7 Trustee

17

18 West St.
Annapolis, Maryland 21401
Email: trustee@morganfisherlaw.com

with a copy (which shall not constitute notice) to:

Shapiro Sher Guinot & Sandler, P.A.
Attn: Richard M. Goldberg, Esq.
250 West Pratt Street, Suite 2000
Baltimore, Maryland 21201
Email: rmg@shapirosher.com

8.09 8.09    Independent Analysis. Each Party hereby confirms that its decision to execute this Agreement has been based upon its independent assessment of documents and information available to it, as it has deemed appropriate.

8.10 8.10    Waiver. No Party shall be deemed to have waived any rights as a result of its entry into this Agreement, and, if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.

8.11 8.11    Relationship Among Parties. Notwithstanding anything herein to the contrary, (i) the duties and obligations of the Parties under this Agreement shall be several, not joint, (ii) no Party shall have any responsibility by virtue of this Agreement for any trading by any other entity; (iii) no prior history, pattern, or practice of sharing confidences among or between the Parties shall in any way affect or negate this Agreement; (iv) the Parties hereto acknowledge that this Agreement does not constitute an agreement, arrangement or understanding with respect to acting together for the purpose of acquiring, holding, voting or disposing of any securities of the Debtor and the Parties do not constitute a "group" within the meaning of Rule 13d-5 under the Securities Exchange Act of 1934, as amended; (v) KORE shall not have any fiduciary duty, any duty of trust or confidence (or otherwise be deemed to be a trustee under the Bankruptcy Code) in any form to the Trustee or Estate, provided, however that KORE shall have the obligations to prosecute and/or settle the Pending Causes of Action as set forth Section 3.03(b) above; and (vi) no action taken by any Party pursuant to this Agreement shall be deemed to constitute or to create a presumption by any of the Parties that the Parties are in any way acting in concert or as such a "group."

8.12 8.12    Several, Not Joint and Several, Obligations. Except as otherwise expressly set forth herein, the agreements, representations, warranties, liabilities and obligations of the Parties under this Agreement are, in all respects, several and not joint and several.

8.13 8.13    Severability and Construction. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, in whole or in part, the remaining provisions shall remain in full force and effect. Upon any such

18

determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

8.14 8.14       Settlement Discussions. This Agreement is part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties. Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence and any other applicable law, foreign or domestic, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.

8.15    No Alteration of Rights or Defenses.  Nothing in this Agreement is intended to, or otherwise shall, alter the rights and defenses of any party to a Pending Cause of Action, any pending adversary proceeding, including Adversary nos. 24-00082 and 24-00112, or any other matter pending or brought against any party by KORE or by any party against KORE, all of which rights and defenses are expressly reserved by any such party and KORE.

*[Remainder of page intentionally left blank]*

19

022794.50190.001.04022988.50190.001.02
15156318.2  49673/150192

IN WITNESS WHEREOF, the Parties have executed this <u>Amended and Restated</u> Claim Settlement and Sale Agreement on the day and year first above written.

**Trustee**:

By:_____

Morgan W. Fisher, Esq., Chapter 7
Trustee for Provizor Federal, Inc.

**Kore Capital Corporation**:

By:_____

Kwesi Rogers, Chief Executive Officer

20

022794.50190.001.04022988.50190.001.02
15156318.2  49673/150192

**EXHIBIT A**

Illustrative Payment Waterfall

*[See below]*

022794.50190.001.04022988.50190.001.02
15156318.2 49673/150192

Loyal Source

| Illustrative Recovery (Gross Proceeds) | Estimated Fees and Expenses | $115,000 of Gross Proceeds to Estate[1] | 5% of Gross Proceeds to Estate[2] | Total Estate Recovery | KORE Gross Proceeds[3] | KORE Recovery[4] |
|---|---|---|---|---|---|---|
| $0 | $50,000 | $0 | $0 | $0 | $0 | ($50,000) |
| $100,000 | $50,000 | $115,000 | $0 | $115,000 | $0 | ($50,000) |
| $500,000 | $250,000 | $115,000 | $25,000 | $140,000 | $360,000 | $110,000 |
| $1,000,000 | $500,000 | $115,000 | $50,000 | $165,000 | $785,000 | $335,000 |
| $2,500,000 | $750,000 | $115,000 | $125,000 | $240,000 | $2,260,000 | $1,510,000 |
| $5,000,000 | $1,000,000 | $115,000 | $250,000 | $365,000 | $4,635,000 | $3,635,000 |

---

[1] Pursuant to Section 5.01(a), the Estate receives $115,000 of the Gross Proceeds.

[2] Pursuant to Section 5.01(a), the Estate receives 5% of the Gross Proceeds.

[3] Pursuant to Section 5.01(b), KORE receives the remaining amount of the Gross Proceeds after payments to the Estate pursuant to Section 5.01(a).

[4] Pursuant to Sections 4.01 and 5.01, KORE is responsible for payment of all Fees and Expenses.

22

022794.50190.001.04022988.50190.001.02
15156318.2 49673/150192

## Impel Capital et al.

| Illustrative Recovery (Gross Proceeds) | Estimated Fees and Expenses | 5% of Net Proceeds to Estate[5] | Total Estate Recovery | 95% of Net Proceeds to KORE[6] | KORE Recovery[7] |
|---|---|---|---|---|---|
| $0 | $50,000 | $0 | $0 | $0 | ($50,000) |
| $100,000 | $50,000 | $2,500 | $2,500 | $47,500 | $47,500 |
| $500,000 | $250,000 | $12,500 | $12,500 | $237,500 | $237,500 |
| $1,000,000 | $500,000 | $25,000 | $25,000 | $475,000 | $475,000 |
| $2,500,000 | $750,000 | $87,500 | $87,500 | $1,662,500 | $1,662,500 |
| $5,000,000 | $1,000,000 | $200,000 | $200,000 | $3,800,000 | $3,800,000 |

---

[5] Pursuant to Section 5.02(b), the Estate receives 5% of the Net Proceeds.

[6] Pursuant to Section 5.02(a), KORE receives 95% of the Net Proceeds.

[7] Pursuant to Section 4.01, KORE is responsible for payment of all Fees and Expenses.

022794.50190.001.04022988.50190.001.02
15156318.2  49673/150192

LCMH et al.

| Illustrative Recovery (Gross Proceeds) | Estimated Fees and Expenses | 5% of Net Proceeds to Estate[8] | Total Estate Recovery | 95% of Net Proceeds to KORE[9] | KORE Recovery[10] |
|---|---|---|---|---|---|
| $0 | $50,000 | $0 | $0 | $0 | ($50,000) |
| $100,000 | $50,000 | $2,500 | $2,500 | $47,500 | $47,500 |
| $500,000 | $250,000 | $12,500 | $12,500 | $237,500 | $237,500 |
| $1,000,000 | $500,000 | $25,000 | $25,000 | $475,000 | $475,000 |
| $2,500,000 | $750,000 | $87,500 | $87,500 | $1,662,500 | $1,662,500 |
| $5,000,000 | $1,000,000 | $200,000 | $200,000 | $3,800,000 | $3,800,000 |

---

[8] Pursuant to Section 5.02(b), the Estate receives 5% of the Net Proceeds.

[9] Pursuant to Section 5.02(a), KORE receives 95% of the Net Proceeds.

[10] Pursuant to Section 4.01, KORE is responsible for payment of all Fees and Expenses.

022794.50190.001.04022988.50190.001.02
15156318.2  49673/150192

25

| Summary report:<br>Litera Compare for Word 11.9.1.1 Document comparison done on 8/4/2026 12:19:08 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4917-3092-3188/1/50190.001.(2026-06-11-DMusgrave).Claim Settlement and Sale Agreement.docx | |
| **Modified DMS:** nd://4910-5585-7860/1/wec.022988.50190.001.Amended and Restated Claim Settlement and Sale Agr.v02.ler.docx | |
| **Changes:** | |
| Add | 175 |
| Delete | 185 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 360 |